345 F.3d 813
 Ralph GAUSVIK, individually, Plaintiff-Appellee,
v.
Robert Ricardo PEREZ, individually, and his official capacity, Defendant-Appellant, and
Kenneth J. Badgley, individually, and his official capacity, et al., Defendants.
 No. 02-35902.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted June 2, 2003 — Seattle, Washington.
 Filed October 3, 2003.
 
 Patrick McMahon, Carlson, McMahon & Sealby, Wenatchee, Washington, for the defendant-appellant.
 Tyler K. Firkins, Van Siclen, Stocks & Firkins, Auburn, Washington, for the plaintiff-appellee.
 Appeal from the United States District Court for the Eastern District of Washington; Alan A. McDonald, District Judge, Presiding. D.C. No. CV-01-00071-AAM.
 Before: Donald P. Lay,* Warren J. Ferguson, and Ronald M. Gould, Circuit Judges.
 OPINION
 LAY, Circuit Judge.
 
 
 1
 Ralph Gausvik brought suit against Detective Robert Perez, alleging Perez violated his civil rights during a sex abuse investigation. The district court denied Perez's motion for summary judgment based on qualified immunity. Perez appeals, and we reverse.
 
 I. Background
 
 2
 Perez worked as a police officer in Wenatchee, Washington. Perez lived with his foster daughter, Donna Everett. In March of 1995, Donna told Perez she had been sexually abused by members of the Wenatchee community. Perez contacted the Washington Child Protective Services (CPS) and began an investigation. Perez and a CPS official drove Donna through Wenatchee and asked her to identify homes in which she had allegedly been abused. One of the homes identified by Donna was owned by Ralph Gausvik. Donna claimed that Gausvik abused her and her three siblings. She also claimed he abused his own children.
 
 
 3
 Gausvik lived with his girlfriend, Barbara Garaas,[1] and their three children, Troy Garaas, Delilah Garaas, and Christa Garaas. Barbara Garaas is also the mother of Travis Garaas, who lived in the same home as the rest of the children. After Donna accused Gausvik of sexual abuse, Perez interviewed Delilah Garass at her elementary school. She did not make any specific allegations of abuse during the interview.
 
 
 4
 After Delilah's interview, Perez and a CPS official visited Gausvik's home and spoke with Travis. Travis did not admit he had been sexually abused. Perez attempted to have Travis admit to the abuse, but Travis refused. Perez did not document the interview in his police report. After examining the home, CPS officials ordered the children removed and placed with foster parents.
 
 
 5
 Perez continued his investigation by interviewing Troy at the CPS office. The interview lasted for two hours. Troy, who suffers from cerebral palsy, allegedly requested a break, but Perez denied the request because Troy had already been given a drink. During the interview, Troy recounted times when he had been sexually abused by his parents and his parents' friends.
 
 
 6
 After Troy's disclosures, CPS officials spoke once again with Travis, and he continued to deny being sexually abused by his father. All of the Garaas children were then examined by Dr. Jantzen. He reported that Travis and Troy's examinations were "suggestive" of sexual abuse and Delilah's examination was "consistent" with sexual abuse. Dr. Jantzen also examined the youngest Garaas child, Christa, and concluded that her tests were "consistent with rectal penetration." Once the exams were complete, Laura Gaukroger, a Central Washington Hospital employee, and CPS worker Kate Carrow, told Perez that the exams were positive for sexual abuse and penetration. Perez then arrested Gausvik and submitted an affidavit of probable cause to the Washington Superior Court. In the affidavit, Perez stated that Gausvik "has been identified by at least 8 child victims as having been sexually abused by [him] ...." Perez also stated that all of the Garaas children tested positive for abuse.
 
 
 7
 The Chelan County Prosecutor charged Gausvik with sexual abuse of Troy. While preparing for the case, the prosecutor and Perez interviewed Travis and Delilah. Both children stated they had been sexually abused by Gausvik. After hearing the statements, the prosecutor amended his criminal information against Gausvik and charged him with sexually abusing Travis and Delilah. All three of the children testified against Gausvik at trial. A jury convicted Gausvik. He was sentenced to 260 months in prison.
 
 
 8
 After serving approximately five years in prison, the Washington Court of Appeals remanded the case to the Washington Superior Court to determine the reliability of the victims' accusations. The prosecutor dismissed all charges against Gausvik. Gausvik then filed a civil rights action under 42 U.S.C. § 1983 against Perez, the City of Wenatchee, and various other state officials. Gausvik alleged Perez violated his constitutional rights during the investigation. Perez filed a motion for summary judgment based on qualified immunity, which the district court denied. See Gausvik v. Perez, 239 F.Supp.2d 1067, 1107 (E.D.Wash.2002). Perez now appeals.
 
 II. Jurisdiction
 
 9
 The first issue is whether we have jurisdiction over Perez's appeal. In a companion case, Cunningham v. Perez, 345 F.3d 802, 2003 WL 22272563 (9th Cir.2003), filed this date, we examined the Supreme Court's decisions in Johnson v. Jones, 515 U.S. 304, 115 S.Ct. 2151, 132 L.Ed.2d 238 (1995), and Behrens v. Pelletier, 516 U.S. 299, 116 S.Ct. 834, 133 L.Ed.2d 773 (1996), and set forth our analysis governing qualified immunity cases. We incorporate that same analysis here.
 
 
 10
 In the present case, the district court found "there is a genuine issue of material fact whether Perez used investigative techniques that were so coercive and abusive that he knew or should have known those techniques would yield false information...." Gausvik, 239 F.Supp.2d at 1094. Under our analysis in Cunningham, we hold the district court's order is immediately appealable. The district court made a legal ruling regarding whether the facts, as shown by Gausvik in the summary judgment proceeding, show that a reasonable officer would have been aware that he was violating Gausvik's constitutional rights. Id. Courts can hear interlocutory appeals from district court orders that determine whether an official acted reasonably. See Collins v. Jordan, 110 F.3d 1363, 1370 (9th Cir.1996); Knox v. Southwest Airlines, 124 F.3d 1103, 1107 (9th Cir.1997). In Knox, for instance, "the district court's denial of defendants' summary judgment motion was subject to interlocutory appeal because the issue was whether a reasonable officer would know that his or her alleged conduct violated clearly established law." Id. at 1107. Similarly, in Collins, the court allowed an interlocutory appeal from the denial of summary judgment because the issue was whether the official reasonably believed that he could hold arrested demonstrators in jail for up to fifty-five hours. Collins, 110 F.3d at 1370. See also Armendariz v. Penman, 75 F.3d 1311, 1317 (9th Cir.1996) (en banc) (exercising jurisdiction over the purely legal issue of whether the "defendants' alleged conduct violated clearly established law").
 
 III. Qualified Immunity
 
 11
 Perez is entitled to qualified immunity if his "conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). We must determine from the summary judgment proceeding whether a constitutional violation occurred and, if so, whether a reasonable officer would have acted in the same manner. Saucier v. Katz, 533 U.S. 194, 201, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001).
 
 
 12
 
 A) Gausvik's Deliberate Fabrication of Evidence Claim
 
 
 
 13
 Gausvik claims Perez violated his right to be free from criminal charges based on evidence that was deliberately fabricated by the government. To survive summary judgment, Gausvik's alleged facts must show: (1) Perez continued his investigation "despite the fact that [he] knew or should have known that [Gausvik] was innocent; or (2) [Perez] used investigative techniques that were so coercive and abusive that [he] knew or should have known that those techniques would yield false information." Devereaux v. Abbey, 263 F.3d 1070, 1076 (9th Cir.2001) (en banc).[2]
 
 
 14
 Gausvik alleges Perez used overbearing tactics in interviewing the children, which he knew would yield false information. However, such tactics do not establish a deliberate-fabrication-of-evidence claim. As Devereaux notes: "an allegation that an interviewer disbelieved an initial denial and continued with aggressive questioning of the child cannot, without more, support a deliberate-fabrication-of-evidence claim, even if the allegation is amply supported by the evidence." Id. at 1077. Gausvik has failed to show by independent evidence that Perez knew or should have known his interview tactics would yield false information. Accordingly, Gausvik cannot as a matter of law rely upon Perez's child interviews to prove his deliberate-fabrication-of-evidence claim.
 
 
 15
 Gausvik further argues Perez falsified his affidavit for probable cause. The affidavit states Troy, Travis, and Delilah tested "positive" for sexual abuse when, in fact, the children's tests were only "suggestive" or "consistent" with sexual abuse. The affidavit also states that eight children accused Gausvik of sexual abuse when, in fact, only two children had positively identified him to Perez. These claims do not show Perez continued the investigation despite knowing Gausvik was innocent or that he used investigative techniques that he knew would yield false information. Gausvik has only shown that Perez carelessly handled the facts and the investigation. He has not pointed to any facts showing Perez knew he was innocent. In fact, the record proves otherwise. Donna and Troy, for instance, told Perez that Gausvik had abused them, and Donna told Perez that Gausvik abused at least eight other child victims. Further, Laura Gaukroger and Kate Carrow told Perez that the Garaas children tested "positive" for sexual abuse. While Perez's affidavit may have been careless or inaccurate, it does not satisfy Devereaux's stringent test. Perez is thus entitled to summary judgment on this claim.
 
 
 B) Gausvik's Sixth Amendment Claim
 
 
 16
 Gausvik's Sixth Amendment claim mirrors his deliberate-fabrication-of-evidence argument. He believes Perez violated his Sixth Amendment right to compulsory process by using interview tactics that made the children recall misinformation. He relies upon various studies indicating that suggestive interrogations can cause children to believe in the truth of false reports presented to them. Given our holding that Perez did not deliberately fabricate the evidence, we find no Sixth Amendment violation. Suggestive interview tactics alone do not amount to a constitutional violation. See id. at 1075.
 
 
 C) Gausvik's Fourth Amendment Claim
 
 
 17
 Gausvik further claims that Perez had no probable cause for the arrest because he fabricated his affidavit in support of probable cause. As we acknowledged earlier, portions of Perez's affidavit were exaggerated or inaccurate. Nevertheless, Perez had probable cause even without considering the inaccurate sections of the affidavit. Probable cause arises when an officer has knowledge based on reasonably trustworthy information that the person arrested has committed a criminal offense. Beck v. Ohio, 379 U.S. 89, 91, 85 S.Ct. 223, 13 L.Ed.2d 142 (1964). Here, Donna and Troy revealed that Gausvik had sexually abused them, and Donna's statements linked Gausvik to a number of other child victims. Dr. Jantzen's report also suggested that all of the Garaas children had been sexually abused. Perez thus had probable cause for the arrest even without considering the contested portions of his affidavit.
 
 
 D) Gausvik's Exculpatory Evidence Claim
 
 
 18
 Gausvik concludes by claiming Perez violated the Due Process Clause of the Fourteenth Amendment by failing to preserve and gather exculpatory evidence. Gausvik's claim fails unless he can show Perez acted in bad faith. See Arizona v. Youngblood, 488 U.S. 51, 58, 109 S.Ct. 333, 102 L.Ed.2d 281 (1988); Miller v. Vasquez, 868 F.2d 1116, 1120 (9th Cir.1989).
 
 
 19
 Gausvik attempts to show bad faith by noting Perez failed to reveal his "coercive tactics," failed to record the children's initial denials of abuse, and failed to write an accurate affidavit for probable cause. This evidence does not prove bad faith. Gausvik must "put forward specific, nonconclusory factual allegations that establish improper motive." Jeffers v. Gomez, 267 F.3d 895, 907 (9th Cir.2001) (internal quotations omitted). Perez's failure to reveal his "coercive tactics" does not establish bad faith because there is no evidentiary showing that Perez did not believe his tactics were lawful. Further, the failure to reveal initial denials of abuse cannot be seen as an effort to suppress exculpatory evidence, especially since its exculpatory value was not apparent at the time the children made their initial denials. See California v. Trombetta, 467 U.S. 479, 489, 104 S.Ct. 2528, 81 L.Ed.2d 413 (1984) (holding evidence is constitutionally material if it "possess[es] an exculpatory value that was apparent before the evidence was destroyed" and is "of such a nature that the defendant would be unable to obtain comparable evidence by other reasonably available means"). Finally, Perez's affidavit for probable cause cannot support Gausvik's claim because Gausvik has not shown that the inaccuracies where intentional or deliberate. Since Gausvik has not shown any independent evidence of bad faith, his claim fails.
 
 IV. Conclusion
 
 20
 We hold Perez is entitled to summary judgment. Gausvik has not satisfied the stringent requirements of Devereaux. He also has not proven Perez violated his constitutional rights. The judgment of the district court denying Officer Perez qualified immunity is therefore REVERSED.
 
 
 
 Notes:
 
 
 *
 The Honorable Donald P. Lay, Senior United States Circuit Judge for the Eighth Circuit, sitting by designation
 
 
 [1]
 The district court refers to Barbara Garaas as Gausvik's wifeSee Gausvik v. Perez, 239 F.Supp.2d 1067, 1076 (E.D.Wash.2002). The record, however, indicates she was his longtime girlfriend.
 
 
 [2]
 TheDevereaux case involved a § 1983 action by a foster parent who had been accused of sexual misconduct. The suit was brought against several officials from the City of Wenatchee. Officer Perez was one of the defendants. After a panel of this court affirmed a summary judgment in favor of the City and the officials, the case was placed en banc. In an opinion written by Judge Tashima, the court en banc reached the same result as the panel.